IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW HOPKINS,<br><br>      Plaintiff,<br><br>      v.<br><br>ANTARES PHARMA, INC., LEONARD S. JACOB, THOMAS J. GARRITY, PETER S. GREENLEAF, ANTON GUETH, ROBERT P. ROCHE JR., KAREN SMITH, CARMEN VOLKART, and ROBERT F. APPLE,<br><br>      Defendants. | Case No. _____<br><br><u>JURY TRIAL DEMANDED</u><br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1.  On April 12, 2022, Antares Pharma, Inc. ("Antares" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Halozyme Therapeutics, Inc. ("Parent") and Atlas Merger Sub, Inc. ("Purchaser") (the "Proposed Merger").

2.  Under the terms of the Merger Agreement, Purchaser commenced a tender offer (the "Tender Offer") to purchase Antares' outstanding common stock for $5.60 in cash per share. The Tender Offer is set to expire on May 24, 2022.

3.  On April 26, 2022, defendants filed a recommendation statement (the "Recommendation Statement") with the U.S. Securities and Exchange Commission (the "SEC").

4.  As alleged herein, the Recommendation Statement fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 15 U.S.C. § 78aa because the Recommendation Statement, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District. *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Antares common stock. Plaintiff resides in this District.

9. Defendant Antares is a Delaware corporation. Antares' common stock is traded on the NASDAQ under the ticker symbol "ATRS."

10. Defendant Leonard S. Jacob is Chairman of the Board of Directors of Antares (the "Board").

11. Defendant Robert F. Apple is Chief Executive Officer and a member of the Board.

12. Defendant Thomas J. Garrity is a member of the Board.

13. Defendant Peter S. Greenleaf is a member of the Board.

14. Defendant Anton Gueth is a member of the Board.

15. Defendant Robert P. Roche Jr. is a member of the Board.

16. Defendant Karen Smith is a member of the Board.

17. Defendant Carmen Volkart is a member of the Board.

18. Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

19. Antares is a specialty pharmaceutical company focused primarily on the development and commercialization of pharmaceutical products and technologies that address patient needs in targeted therapeutic areas.

20. On April 12, 2022, Antares entered into the Merger Agreement.

21. The press release announcing the Proposed Merger provides as follows:

Halozyme Therapeutics, Inc. (NASDAQ: HALO) ("Halozyme") and Antares Pharma, Inc. (NASDAQ: ATRS) ("Antares") today announced that the companies have entered into a definitive agreement pursuant to which Halozyme will acquire Antares for $5.60 per share in cash. The transaction, which values Antares at approximately $960 million, was unanimously approved by both the Halozyme and Antares Boards of Directors.

The transaction is expected to be immediately accretive to Halozyme's 2022 revenue and non-GAAP earnings and to accelerate top- and bottom-line growth through 2027, with multiple growth drivers beyond 2027. The combination of Halozyme and Antares will create a leading drug delivery and specialty product company. The Antares business consists of a best-in-class, differentiated, royalty revenue generating auto injector platform business that offers broad licensing opportunity, and a commercial business, with three proprietary commercial products.

"The addition of Antares, particularly with its best-in-class auto injector platform and specialty commercial business, augments Halozyme's strategy, further strengthens our position as a leading drug delivery company and extends our strategy to include specialty products," said Dr. Helen Torley, president and chief executive officer of Halozyme. "The acquisition of Antares fits well with our previously discussed strategic priorities and provides substantial financial growth potential and disruptive solutions to significantly improve patient experiences and outcomes for emerging and established therapies. Halozyme is well-positioned to

3

leverage Antares' value proposition, driven by a strong balance sheet, established industry relationships and business development experience. We look forward to welcoming Antares' talented team as we embark on our next chapter of accelerating financial growth, maximizing patient benefit, and enhancing value."

Robert F. Apple, president and chief executive officer of Antares, commented, "We are pleased to have reached this agreement with Halozyme, as this transaction showcases the value of Antares' highly complementary business, provides our shareholders with attractive and certain value, and brings together industry-leading expertise and drug delivery platforms to accelerate growth and create new opportunities. As we remain committed to continuing to serve our partners, I would like to thank our employees for their hard work and dedication to this mission. We look forward to working with the Halozyme team to complete the transaction and deliver best-in-class therapies and drug delivery solutions."

**Compelling Financial and Strategic Benefits**

**Immediate Revenue and Non-GAAP Earnings Accretion and Long-Term Financial Upside:** The transaction is expected to be immediately accretive to Halozyme's 2022 revenue and non-GAAP earnings, supported by Antares' proprietary product revenues, royalty revenues and profitability. The addition of Antares is also expected to accelerate top- and bottom-line growth and enhance cash flow generation through 2027, increasing Halozyme's flexibility to pursue further growth drivers in the forms of new product and therapy launches, and partnerships.

**Business Development to Augment Long-Term Growth, Consistent with Strategic Priorities:** The addition of Antares' commercial products and existing auto injector capabilities accelerate Halozyme's strategy to drive long-term, durable revenue growth and value creation through focused external growth. Halozyme expects to build on Antares' core platform technology and capabilities to drive incremental, durable revenue opportunities with additional intellectual property protections for Antares technology in place beyond 2030.

**Substantial Market Expansion Opportunity in High Revenue Segments:** Antares' successful development and partnership of its technology platforms offers a widely licensable product suite that can be broadly applied across a spectrum of market segments representing multiple tens of billions of dollars[1] in estimated peak sales. This includes the potential for conversion to both high-viscosity and high-volume auto injector devices, supported by Halozyme's extensive infrastructure and commercially validated ENHANZE platform technology.

**High Growth, Durable Commercial Franchise with Proven Track Record:** Antares' suite of FDA-approved, high quality commercial products and partner products utilizing the Antares auto injector technology have already

4

demonstrated commercial success and are positioned for long-term growth. Launch of Tlando™ will leverage existing testosterone commercial infrastructure and capabilities in a growing therapeutic category, building on momentum created by Xyosted®'s success.

**Two Highly Complementary Platforms, Each with Meaningful Pipelines:** Antares' broadly applicable, differentiated auto injector platform is suitable for use with a broad range of medications. The versatility of this platform enables a highly licensable business with significant revenue upside. The combined entity will be able to leverage its deep industry expertise and existing commercial infrastructure in the U.S. to expand delivery capabilities and pursue growth opportunities within multiple small- and large-molecule products.

**Transaction Terms, Financing and Time to Closing**

Under the terms of the merger agreement, Halozyme will commence a cash tender offer to acquire all of the outstanding shares of Antares for $5.60 per share in cash. The transaction is not subject to a financing condition. Halozyme intends to finance the transaction using existing cash on hand and new sources of debt. Following completion of the transaction, Halozyme expects to maintain a strong balance sheet with less than 3.5x net debt-to-EBITDA ratio at the time of transaction close. Net debt-to-EBITDA ratio is expected to decline significantly in the quarters post transaction close. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Antares' outstanding shares of common stock, the expiration or termination of the HSR waiting period, and other customary conditions. Following the successful completion of the tender offer, Halozyme will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. This transaction is expected to close in the first half of 2022.

BofA Securities and Wells Fargo Securities LLC are acting as financial advisors to Halozyme and Weil, Gotshal & Manges LLP is acting as legal advisor. Jefferies LLC is acting as financial advisor to Antares and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor.

22. On April 22, 2022, defendants filed the Recommendation Statement, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

23. The Recommendation Statement fails to disclose material information regarding Antares's financial projections, specifically: (i) the line items underlying the financial projections; (ii) the risk adjustments to the projections; and (iii) net income.

24. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

<u>Financial Analyses</u>

25. The Recommendation Statement fails to disclose material information regarding the financial analyses conducted by Jefferies LLC ("Jefferies"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

26. Regarding Jefferies' Selected Public Companies Analysis, the Recommendation Statement fails to disclose the individual multiples and metrics for the companies utilized by Jefferies.

27. Regarding Jefferies' Selected Precedent Transactions Analysis, the Recommendation Statement fails to disclose the individual multiples and metrics for the transactions utilized by Jefferies.

28. Regarding Jefferies' Discounted Cash Flow Analysis, the Recommendation Statement fails to disclose: (i) the net operating loss carryforwards utilized by Jefferies; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized by Jefferies; and (iii) the terminal values utilized by Jefferies.

<u>Background of the Proposed Merger</u>

29. The Recommendation Statement fails to disclose whether Antares signed any NDAs containing don't ask, don't waive provisions.

# COUNT I

## Claim Against Defendants for Violation of Section 14(e) of the Exchange Act

30. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

31. Section 14(e) of the Exchange Act states:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

32. Defendants disseminated the misleading Recommendation Statement, which contained statements that, in violation of Section 14(e) of the Exchange Act, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not misleading.

33. The Recommendation Statement was prepared, reviewed, and/or disseminated by defendants.

34. The Recommendation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

35. By virtue of their positions within the Company and/or roles in the process and the preparation of the Recommendation Statement, defendants were aware of this information and their duty to disclose this information in the Recommendation Statement.

36. The omissions in the Recommendation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares.

37. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

38. Defendants knowingly or with deliberate recklessness omitted the material

information identified above in the Recommendation Statement, causing statements therein to be materially incomplete and misleading.

39. Accordingly, defendants violated Section 14(e) of the Exchange Act.

40. Plaintiff is threatened with irreparable harm and has no adequate remedy at law.

## COUNT II

### Claim Against Defendants for Violation of 14(d) of the Exchange Act

41. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

42. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

43. Rule 14d-9(d) states:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

44. Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

45. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Recommendation Statement false and/or misleading.

46. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and

misleading.

47. The omissions in the Recommendation Statement are material to plaintiff, and he will be deprived of his entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

48. Plaintiff has no adequate remedy at law.

## COUNT III

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

49. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Volt within the meaning of Section 20(a) of the Exchange Act as alleged herein.

51. Due to their positions as directors of Volt and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53. Each of the Individual Defendants had direct and supervisory involvement in the

day-to-day operations of the Company, and, thus, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

54. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

55. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

56. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

57. Due to their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

58. Plaintiff is threatened with irreparable harm and has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief against defendants as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

      D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9;

      E.      Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2022

**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*

11